UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JESSIE VORNELL LEWIS,

                     Petitioner,                     Case No. 1:18-cv-535

v.                                         Honorable Gordon J. Quist

WILLIE SMITH,

                     Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jessie Vornell Lewis is incarcerated with the Michigan Department of Corrections at the Ionia Correctional Facility (ICF) in Ionia County, Michigan.  Following an eight-day jury trial in the Wayne County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317; armed robbery, in violation of Mich. Comp. Laws § 750.529; and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b..  On October 3, 2014, the court sentenced Petitioner as a third habitual offender, Mich. Comp. Laws § 769.11, to concurrent prison terms of 40 to 70 years for murder and 20 to 35 years for armed robbery.  Those sentences were to be served consecutively to a 2-year sentence for felony-firearm.

        Petitioner timely filed a habeas corpus petition raising four grounds for relief, as follows:

        I.      Petitioner is entitled to entry of a judgment of acquittal on all charges as there was insufficient evidence.

II.    Petitioner is entitled to a new trial as the verdict was against the great weight of the evidence.

III.    Petitioner is entitled to a new trial as he was denied effective assistance of counsel.

IV.    Petitioner is entitled to be resentenced.

(Pet., ECF No. 1, PageID.5-9.)  Respondent has filed an answer to the petition (ECF No. 8) stating that the grounds should be denied because they are meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

On April 7, 2014, police responded to a 911 call regarding a vehicle crash and gunshots.  When police arrived at 13515 Maine Street in Wayne County, they found Curtis Robinson lying face down outside of his vehicle.  Robinson had been shot twice.  There were two cell phones on the ground near him.  One of the phones belonged to Petitioner.

Petitioner's phone revealed text messages with Petitioner's co-defendant, Jarvis Glenn, that suggested the two planned to rob someone, presumably Curtis Robinson.  A resident at 13515 Maine Street, who happened to be Petitioner's aunt, testified that she saw Petitioner in the area before the crash and shooting and saw him fleeing afterward.  There was also testimony that Jarvis Glenn was seen in Curtis Robinson's vehicle before the crash and shooting and was seen fleeing the area after.  Neither the aunt nor any other witness saw Petitioner with a gun or saw him rob or shoot Curtis Robinson.

The location information from the cellphones was consistent with Petitioner's and Glenn's participation in the crime.  Additionally, police found ammunition in Petitioner's

residence that matched the caliber of the gun that shot Robinson.  The gun used to shoot Robinson was never found.

Petitioner testified.  He claimed the text exchange related to a robbery he committed an hour earlier.  (Trial Tr. VI, ECF No. 9-9, PageID.1311.)  To support his story, he noted that there was a one-hour difference between the texts as recreated by his cellphone service provider and the time of the crime.  The prosecutor's expert explained the time discrepancy by noting that the data was provided by a company in the Central Time Zone.  Petitioner testified that the expert was lying.  (*Id.*, PageID.1315, 1332-1334.)  Petitioner also testified that the person he was communicating with regarding the robbery an hour earlier was not Jarvis Glenn, but was instead Jarvis Glenn's brother.  (*Id.*, PageID.1314-1315.)  After Petitioner provided that testimony, Glenn, who had previously expressed his intention to testify (*Id.*, PageID.1289-1290), decided to simply rest (*Id.*, PageID1357-1358.).

Both Defendants were charged with felony-murder, armed robbery, and felony-firearm.  The jurors deliberated for two days.  They convicted Petitioner of the lesser-included offense of second-degree murder, armed robbery, and felony-firearm.[1]  They convicted Glenn of armed robbery.  The jurors were unable to reach a verdict on the other two charges against Glenn.

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences to the Michigan Court of Appeals.  In the brief that Petitioner filed with the assistance of counsel, Petitioner raised four issues—the same four issues he raises in his habeas petition.  (Pet'r's Appeal Br., ECF No. 9-13, PageID.1507.)  Petitioner also filed a *pro per* supplemental brief raising four additional issues.  (Pet'r's Supp. Br., ECF No. 9-13, PageID.1565.)  By

---

[1] The second-degree murder conviction appears to be a compromise verdict.  Having found Petitioner committed, or at least attempted, the armed robbery of Craig Robinson and having found Petitioner responsible for killing Craig Robinson, a finding of guilt for first-degree felony murder would seem to necessarily follow.  Mich. Comp. Laws § 750.316(1)(b).

3

unpublished opinion issued July 26, 2016, the Michigan Court of Appeals denied relief on all of Petitioner's claims.  (Mich. Ct. App. Op., ECF No. 9-13, PageID.1480-1491.)

After the court of appeals denied relief, Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court.  Petitioner raised the eight issues he raised in the Michigan Court of Appeals, plus three new issues.  (Pet'r's Appl. for Leave to Appeal, ECF No. 9-14, PageID.1603-1618.)  By order entered March 7, 2017, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 9-14, PageID.1602.)  Petitioner then filed his habeas petition.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299

4

F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial

court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.    Discussion

### A.    Great weight of the evidence (habeas issue II)

Petitioner argues that his conviction is against the great weight of the evidence.  The Michigan Court of Appeals concluded otherwise.  (Mich. Ct. App. Op., ECF No. 9-13, PageID.1482-1483.)

The assertion that a conviction was against the great weight of the evidence does not state grounds for habeas corpus relief.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id.* at 133 n.8.  As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10-cv-1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08-cv-642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review.").  Because this Court lacks authority to review a state court's application of its own law,

the state-court determination that the verdict was not against the great weight of the evidence is final.

### B.      Sufficiency of the evidence (habeas issue I)

Petitioner contends that there was insufficient evidence that "he caused the victim's death, . . . of a robbery, and . . . that he possessed a firearm, . . . to sustain the guilty verdict for Second Degree Murder, Armed Robbery or Felony Firearm." (Pet'r's Br., ECF No. 3, PageID.64.) A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d

652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Although the Michigan Court of Appeals relied on state-law authority for the sufficiency standard, that state-law authority ultimately derived from *Jackson v. Virginia*.[2] Moreover, the court of appeals applied the standard exactly as *Jackson v. Virginia* directs—it considered the evidence in a light that favored the prosecution against the elements of the offenses as established by state law:

> Defendant initially challenges the absence of any eyewitness testimony or other evidence suggesting his possession of a firearm or weapon at the scene of the crime. Defendant acknowledged that he was present at the crime scene when certain events transpired.  Defendant's aunt, Norma Lyte, observed defendant at the scene immediately before hearing gunshots and the car crash and saw someone wearing the same clothing as defendant running from the scene.  Norma indicated a high degree of certainty that the person running from the scene was defendant. Defendant's cellular telephone was recovered from the crime scene, near the victim's body.  A search of defendant's residence resulted in the retrieval of the type of ammunition consistent with that used in shooting the victim and a cellular telephone box matching the telephone belonging to defendant and found at the crime scene.  The actual weapon used was never recovered.  An analysis of defendant's cellular telephone and records obtained from the carrier, place defendant at the crime scene at the relevant times and serve to substantiate his activities throughout the day leading up to the murder.  Telephone calls and text messages were exchanged between defendant and his codefendant, Jarvis Glenn, who was known to have been with the victim during the day, suggesting the victim, Glenn and defendant were in the same general area before the shooting occurred. The content of the text messages exchanged between defendant and Glenn imply a plan to take the victim's cellular telephones and an element of planning.  The cause of the victim's death was attributable to two gunshot wounds.  While witnesses did not observe defendant with a gun at the scene, photographs of defendant on his cellular telephone demonstrate he had access to weapons.

> "Circumstantial evidence and the reasonable inferences it permits are sufficient to support a conviction, provided the prosecution meets its constitutionally based burden of proof beyond a reasonable doubt."  *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010).  "It is for the trier of fact, not the appellate court,

---

[2] The court of appeals cited *People v. Tombs*, 697 N.W.2d 494, 501 (Mich. 2005), which, in turn, cites *People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992) (citing *Jackson v. Virginia*).

to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Further, it is well established that evidence of flight will support an inference of a defendant's consciousness of guilt. *People v Compeau*, 244 Mich App 595, 598; 625 NW2d 120 (2001). The term "flight" has been applied to actions such as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape from custody. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "[I]t is always for the jury to determine whether evidence of flight occurred under such circumstances as to indicate guilt." *People v Unger*, 278 Mich App 210, 221; 749 NW2d 272 (2008).

Ample evidence was adduced at trial that placed defendant at the scene and then fleeing the area immediately after the vehicular crash and gunshots. Defendant's cellular telephone was recovered close to the victim's body, and an analysis of the cellular telephone and the carrier records associated with it confirm defendant's presence in the area and his communications with Glenn, who had been with the victim, immediately before the shooting and indicating a plan or communications pertaining to a theft involving the victim. Evidence of where the victim's wounds were incurred further suggests that the victim was shot by someone outside of the victim's vehicle. It was undisputed that the victim was a drug dealer. Witnesses testified that the victim had indicated problems with his business in the 24-hour period preceding his death and that defendant worked for the victim. Taking this evidence in the light most favorable to the prosecution, we conclude that sufficient evidence was adduced to sustain defendant's convictions.

Defendant also argues that there was no proof of an armed robbery because the victim's cellular telephones, which the prosecution contended were what the defendant intended to steal, were not removed from the victim or his vehicle. Contrary to defendant's argument, "a completed larceny is no longer necessary to sustain a conviction for the crime of robbery or armed robbery." *People v Williams*, 491 Mich 164, 166; 814 NW2d 270 (2012).

Defendant further asserts that he provided a reasonable, alternative explanation for his presence in the area and his text messages with Glenn. This Court is not permitted to interfere with the role of the trier of fact in determining the weight of the evidence or the credibility of witnesses. *Hardiman,* 466 Mich at 428; *Kanaan*, 278 Mich App at 619. Further, inconsistent witness testimony does not render the evidence insufficient because such issues were for the jury to resolve in determining the credibility of the witnesses. *People v Smith*, 205 Mich App 69, 72 n 1; 517 NW2d 255 (1994). Based on the requirements that this Court "draw all reasonable inferences and make credibility choices in support of the jury verdict," *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), defendant's challenges to the sufficiency of the evidence premised on the credibility of witnesses are without merit.

(Mich. Ct. App. Op., ECF No. 9-13, PageID.1482.)

Petitioner's continuing challenge to the sufficiency of the evidence does not address the evidence referenced by the court of appeals or the inferences the court identified that might support the verdicts.  Instead, Petitioner merely reiterates the arguments he made to the court of appeals: no witness saw Petitioner with a gun; no witness saw Petitioner fire a gun; no gun was recovered, there was no evidence of gunshot residue on Petitioner's clothing, there was no evidence anything was stolen, and no testimony demonstrates that Petitioner intended to rob Mr. Robinson (because the texts related to a different robbery).  (Pet'r's Br., ECF No. 3, PageID.65-66; Pet'r's Reply Br., ECF No 12, PageID1747.)

The jurors obviously inferred that Petitioner (and not Jarvis Glenn) possessed and fired the gun that killed Mr. Robinson.  Moreover, the jurors obviously concluded that Petitioner's claim that the texts related to a different robbery were not credible and then inferred that the texts related, instead, to the planned robbery of Mr. Robinson.

*Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts.  443 U.S. at 319.  In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'"  *Id*. at 655.  The Court described a reasonable inference as an inference that a rational jury could make from the facts.  Certainly, the inferences identified by the court of appeals—that Petitioner was present and in close proximity to the crime, that Petitioner and Glenn were planning to rob Robinson, that Petitioner fled the crime scene and then the city, and that Petitioner had access to weapons and ammunition—rationally flow from the underlying facts.  The inferences are not compelled by those facts.  They are simply rational.  *Id*. at 656.  To succeed in his challenge, Petitioner must show that the identified inferences are irrational.  He has not.

Instead of attacking the rationality of the inferences that support the verdict, Petitioner offers other evidence and inferences—evidence and inferences that favor him—that, if credited, support the conclusion that Petitioner was not guilty of the charged crimes.  Petitioner's argument asks this Court to turn the *Jackson* standard on its head.  This Court may not, under *Jackson*, invade the province of the jury to draw inferences and make credibility determinations that favor Petitioner.  Petitioner has failed to show that the court of appeals' determination that the evidence was sufficient to convict him is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, he is not entitled to habeas relief on his sufficiency claim.

## C.      Sentence errors (habeas issue IV)

Petitioner contends that three of the offense variables were improperly scored when determining the appropriate minimum sentence range under the Michigan sentencing guidelines. Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  There are circumstances that might render a guidelines scoring issue cognizable on habeas review.   For example, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  Or, if a mandatory minimum sentence were determined based on "judge-found" facts the sentence could violate Sixth Amendment rights.

Petitioner makes such a Sixth Amendment claim for the three offense variable scores.  Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*,

530 U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined its conclusion with regard to the state sentencing guideline scheme in *Blakely* would also apply to the federal sentencing guidelines.  One group of five justices concluded that the federal sentencing guidelines ran afoul of the Sixth Amendment.  Another group of five justices determined the appropriate remedy was to make the guidelines discretionary.

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  Petitioner was sentenced in Wayne County a little over one year after *Alleyne*.

At the time Petitioner was sentenced, however, the Michigan Court of Appeals had already concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence; it had no impact on judicial factfinding in scoring the sentencing guidelines

producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013).  The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment and, as a consequence, the question was not a matter of clearly established Supreme Court precedent. *Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (emphasis added).  The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

While Petitioner's case was pending in the Michigan Court of Appeals, the Michigan Supreme Court granted leave to appeal on an application that raised the *Alleyne* issue. *People v. Lockridge*, 846 N.W.2d 925 (Mich. 2014).  The Michigan Supreme Court decided the *Herron* decision was wrong, reasoning that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015) (emphasis in original).  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy, consistent with *Booker*, was to make the guidelines advisory only.  *Id.* at 520-21.

The Michigan Supreme Court made its holding in *Lockridge* applicable to cases still "pending on direct review." *Id.* at 523.  Petitioner's case was still pending on direct review at the time the *Lockridge* court reached its decision.

The *Lockridge* court identified a limited group of defendants that might demonstrate the potential for plain error sufficient to warrant a remand to the trial court: "defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure . . . ." *Id.* at 522 (footnote omitted).  If a remand was appropriate, the supreme court called upon the trial court, on remand, to determine if it "would have imposed a materially different sentence but for the unconstitutional restraint . . . ." *Id.* at 524.

Petitioner moved the Michigan Court of Appeals to remand his case to the trial court for resentencing under *Lockridge*.  The court of appeals denied the motion because Petitioner had failed to show that he was entitled to that relief.  (Mich. Ct. App. Order, ECF No. 9-13, PageID.1584.)  The court explained that determination in its opinion.

The court of appeals agreed with Petitioner that Offense Variable 5, regarding psychological injury to the victim's family, was scored using "judge-found" facts.  (Mich. Ct. App. Op., ECF No. 9-13, PageID.1485-1487.)  Similarly, Offense Variable 14, regarding Petitioner's role as a leader in the crime, was scored using "judge-found" facts.  (*Id.*)  The court concluded that Offense Variable 13, however, regarding whether Petitioner's felonious acts constituted a continuing pattern of criminal behavior, were scored using facts found by the jury or admitted by Petitioner when he testified.  (*Id.*)  Taking into account these changes, the court of appeals concluded that Petitioner's *Lockridge*-adjusted Offense Variable score was 105, not 130 as initially scored.  (*Id.*)  That score, however, would leave Petitioner in exactly the same cell in the relevant

14

sentencing guidelines grids.  Mich. Comp. Laws §§ 777.61, 777.62.  Thus, the court of appeals determined that Petitioner could not demonstrate that his guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and that any error was "harmless." (Mich. Ct. App. Op., ECF No. 9-13, PageID.1487-1488.)

"State courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable."  *O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).  In Petitioner's case, the court of appeals agreed with his argument that two of the offense variables were improperly scored using "judge-found" facts.  The court of appeals disagreed regarding the third offense variable.  With regard to that variable, the court reasoned as follows:

> "Under MCL 777.43, the trial court must score points under OV 13 on the basis of a defendant's felonious acts that constitute a continuing pattern of criminal behavior.  If the sentencing offense was part of a pattern of felonious criminal activity involving three or more crimes against a person, the trial court must score OV 13 at 25 points."  *People v Bemer*, 286 Mich App 26, 33; 777 NW2d 464 (2009).  "When determining the appropriate points under this variable, 'all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.'"  *Id.*, citing MCL 777.43(2)(a). With regard to the scoring of OV 13, defendant had a prior armed robbery conviction in 2010 in addition to his current convictions for second-degree murder and armed robbery.  A pattern of criminal activity can be premised on multiple offenses arising from the same event or occurrence.  *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001).  As such, the factual basis for the scoring of this variable comprised information admitted by defendant or found by the jury premised on the guilty verdict of two of the charged offenses and defendant's acknowledgment of his prior conviction. See *Jackson*, ___ Mich App at ___; slip op at 13 ("The United States Supreme Court has recognized that a defendant's admission of a prior conviction satisfies the requirement that a sentencing enhancement be based on facts admitted by a defendant or found by a jury."). Therefore, the scoring of OV 13 was supported by facts admitted by defendant and were properly considered in defendant's total OV score.  *Id.*

(Mich. Ct. App. Op., ECF No. 9-13, PageID.1486.)  The record supports the court's conclusion that the jury's verdict and Petitioner's admissions evidence his commission of the requisite number

of offenses.  The court's further conclusion that the sentencing guidelines require scoring 25 points under the circumstances presented is a state court determination of state law that is binding on this Court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit recognizes "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

The appellate court's determination that any error was harmless because the properly scored guidelines yield the same minimum sentence range is logically unassailable. Whether the trial court exercised its discretion to select a minimum sentence from a particular minimum sentence range based on an OV score of 130 points or 105 points simply does not matter. Therefore, the appellate court's determination of harmlessness is reasonable and forecloses habeas relief.

### D.    Ineffective assistance of trial counsel (habeas issue III)

Petitioner contends his trial counsel was ineffective.  Counsel failed to "file certain motions, requests an evidentiary hearing, and pursue certain lines of questioning at trial . . . ." (Pet'r's Br., ECF No. 3, PageID.68.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

16

assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the

challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding

that counsel's strategic decisions were hard to attack).  The court must determine whether, in light

of the circumstances as they existed at the time of counsel's actions, "the identified acts or

omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466

U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the

defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court

reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of

*Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*,

556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*,

563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances,

the question before the habeas court is "whether there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir.

2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing

on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at

102).

### 1.    Counsel's failure to object to offense variable scoring

Petitioner contends that trial counsel was ineffective because he failed to object to

the scoring of the three variables identified above.  The Michigan Court of Appeals rejected that

claim: "Notably, at the time of defendant's sentencing our Supreme Court had not issued its

decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)[; d]efense counsel cannot

be required to be prescient or knowledgeable regarding rulings not yet made."  (Mich. Ct. App.

17

Op., ECF No. 9-13, PageID.1486.)  At the time of Petitioner's sentencing, the state of the law in Michigan was that "judge-found" facts could be used to score the sentencing guidelines.  *Herron*, 845 N.W.2d at 539.  Had counsel objected on the grounds Petitioner proposes, the objection would have been denied as meritless.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Moreover, even if trial counsel's failure to object were professionally unreasonable, that failure was not prejudicial on another level.  As explained above, any *Lockridge* error was harmless.  The determination that any error was harmless necessarily means that it is not prejudicial under *Strickland*.  *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error at best, he cannot establish that he suffered prejudice [under *Strickland*].").

### 2.    Counsel's failure to object to rebuttal testimony from the victim's brother

After Petitioner testified that he did not know the victim and had not sold drugs for the victim, the prosecutor put on rebuttal testimony from the victim's brother, Tyrone Thomas.  Mr. Thomas testified that Petitioner worked for the victim, selling drugs.  (Trial Tr. VI, ECF No. 9-9, PageID.1360-1363.)  The trial court had ordered all witnesses to be sequestered until they

testified.  (Trial Tr. I, ECF No. 9-4, PageID.329-331; Trial Tr. II, ECF No. 9-5, PageID.517.)
Petitioner argued to the court of appeals that his counsel was ineffective because counsel "did not
inquire whether this person had been in the Courtroom at all during the trial."  (Pet'r's Appeal Br.,
ECF No. 9-13, PageID.1546.)

 The court of appeals rejected Petitioner's claim because the witness's testimony
was relevant and because Petitioner had failed to assert, much less show, that the witness "was
present in the courtroom during the elicitation of other evidence or testimony . . . ."  (Mich. Ct.
App. Op., ECF No. 9-13, PageID.1485.)  Petitioner does not respond to the court of appeals'
determination in his petition or brief.  Indeed, he does not address it at all; he merely repeats the
argument from his appeal brief.  Thus, Petitioner has offered no record support for the premise of
this argument—that the witness violated the sequestration order.

 Because Petitioner has not shown that the court of appeals determinations regarding
the witness's presence during other testimony is unreasonable on the record, he cannot show that
his counsel's actions were professionally unreasonable or that he suffered any prejudice.
Therefore, Petitioner has failed to show that the court of appeals determination that this ineffective
assistance claim has no merit is contrary to, or an unreasonable application of, *Strickland*.
Accordingly, Petitioner has failed to establish an entitlement to habeas relief on this claim.

### 3. Counsel's failure to move for separate trials or juries

 Petitioner complains that his counsel rendered ineffective assistance because
counsel failed to move for separate trials, or at least separate juries.    There is no decision of the
United States Supreme Court clearly establishing a right under the Due Process Clause to separate
trials or juries.  Joint trials play a vital role in the criminal justice system. *Richardson v. Marsh*,
481 U.S. 200, 209 (1987).   Joint trials generally serve the interests of justice by avoiding

inconsistent jury verdicts and facilitating the efficiency and fairness of the criminal justice system. *Id.* at 209-10.

The Supreme Court has delineated few constitutional rules in this area.  The Court has held that separate trials are constitutionally required where the prosecution intends to introduce the confession of a co-defendant which incriminates another defendant.  *See Bruton v. United States*, 391 U.S. 123, 137 (1968).  The *Bruton* rule is designed to vindicate a defendant's right to confront his accusers, so separate trials are not necessary when the co-defendant is subject to cross-examination.  There was no Confrontation Clause problem during Petitioner's trial because Jarvis Glenn's very brief statement to the police did not incriminate Petitioner.

Beyond the *Bruton* rule, the Supreme Court has left the matter of severance to state law and the trial judge's discretion.  The Court remarked in *United States v. Lane*, 474 U.S. 438 (1986), that the denial of a motion for severance does not in and of itself implicate constitutional rights.  Because there was no *Bruton* issue, it was not professionally unreasonable for Petitioner's counsel to forego a motion for separate trials or juries based on federal constitutional law.  That leaves only the question of whether counsel erred when he failed to file such a motion based on state law.

The Michigan Court of Appeals rejected Petitioner's claim that separate trials or juries were appropriate under state law:

> Defendant next asserts trial counsel was ineffective for failing to obtain a separate trial or jury from his codefendant, contending their defenses were antagonistic.  As discussed in *People v Bosca*, 310 Mich App 1, 44; 871 NW2d 307 (2015) (citations and quotation marks omitted):
>
> > There is no absolute right to separate trials, and in fact, a strong policy favors joint trials in the interest of justice, judicial economy, and administration.  Severance should be granted when defenses are antagonistic.  A defense is deemed antagonistic when it appears that a codefendant may testify to exculpate himself and to incriminate the defendant.  Further, defenses must be not only inconsistent, but also

20

mutually exclusive or irreconcilable.  In other words, the tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other.  Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice.

It is difficult to comprehend defendant's contention that the defense Glenn asserted was antagonistic, particularly given the absence of any testimony by Glenn or witnesses called on his behalf.  The evidence demonstrates that defendant and Glenn were in the same general area at the time of the relevant events.  Evidence also established that Glenn was with the victim earlier in the day and that Glenn and defendant exchanged cellular telephone calls and text messages near the time of the events.  Both defendant and Glenn asserted they were not perpetrators of the crime and did not accuse each other.  Hence, the defenses were not antagonistic or irreconcilable necessitating severance of trials or a separate jury.

Defendant also argues that the inability of the jury to reach a verdict with regard to certain charges against Glenn proves that separate juries or trials were necessary.  Defendant suggests that the guilty verdicts the jury rendered on his charges serves as a means for the jury to "rationalize" their inability to render a verdict on the same charges with regard to Glenn.  Defendant asserts that a separate jury or trial would have forced the jury to focus on the lack of evidence against defendant instead of obfuscating the issue of guilt caused by Glenn's finger-pointing.  But contrary to defendant's theory, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *People v Hana*, 447 Mich 325, 350; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994), quoting *Zafiro v United States*, 506 US 534, 540; 113 S Ct 933; 122 L Ed 2d 317 (1993).  Further, the trial court allayed any risk of prejudice by instructing the jury to consider each defendant separately.  See *Hana*, 447 Mich at 351.  Because defendant and Glenn did not present mutually exclusive defenses, the use of a joint trial and jury was not prejudicial, and the jury's ability to assess the guilt or innocence of each defendant separately was not hindered.

(Mich. Ct. App. Op., ECF No. 9-13, PageID.1484-1485.)[3]  The court of appeals determination that,

as a matter of state law, separate trial or juries were  not warranted, is binding on this Court.  Thus,

---

[3] The court of appeals relied on *Hana*, which quoted from *Zafiro v. United States*, 506 U.S. 534 (1993).  The Sixth Circuit, however, recognizes that *Zafiro* is based on the Federal Rules of Criminal Procedure, not constitutional grounds.  *See Phillips v. Million*, 374 F.3d 395, 398 (6th Cir. 2004).  Although *Zafiro's* value as precedent in the habeas context is limited, the Court's analysis is instructive.  In *Zafiro*, the joined co-defendants challenged the failure to sever because they offered conflicting defenses.  The Supreme Court declined to adopt a "bright line" rule requiring severance whenever co-defendants have conflicting defenses.  *Zafiro*, 506 U.S. at 538.  "Mutually antagonistic defenses are not prejudicial *per se*.  Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39.  The Supreme Court noted that "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*  As the Michigan Court of Appeals observed, such a limiting instruction was given by the trial court in Petitioner's case.  (Trial Tr. VI, ECF No. 9-9, PageID.1421.)

a motion seeking separate trials or juries would not have been meritorious.  As noted above, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752.  Accordingly, Petitioner has failed to show that the court of appeals' rejection of this ineffective assistance claim is contrary to, or an unreasonable application of *Strickland*, and he is not entitled to relief on that claim.

### 4.      Other failures

Petitioner made passing reference to other failures by counsel in his appellate briefs: counsel failed to file certain motions, counsel failed to request an evidentiary hearing, counsel failed to pursue certain lines of questioning at trial; and trial counsel failed to provide appellate counsel with copies of Petitioner's trial notes asking trial counsel to take certain actions. (Pet'r's Appeal Br., ECF No. 9-13, PageID.1544-1545.)  Petitioner repeats that list in his habeas brief.  (Pet'r's Br., ECF No. 3, PageID.67-68.)  The Michigan Court of Appeals addressed these claims as follows:

> First, defendant contends that trial counsel was ineffective for not seeking an evidentiary hearing or pursuing certain lines of questioning that he had requested. Notably, defendant fails to provide any detail regarding these alleged omissions by his trial counsel or to elucidate their relevance.  Defendant's failure to provide any authority or to identify evidence from the record to support his claim constitutes an abandonment of this aspect of the issue on appeal.  *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001) (an appellant cannot simply announce his position and leave it for this Court to discover and rationalize the basis for his claims).

> Similarly, the failure of trial counsel to turn over his file to appellate counsel does not serve to demonstrate that counsel was ineffective at trial.  Defendant's claim is conspicuously deficient of any details regarding the line of questioning he wished counsel to pursue or the types of motions or documents he wished his attorney to file with the trial court.  To prevail on an ineffective assistance of counsel claim, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."  *Trakhtenberg*, 493 Mich at 52.  Counsel's decisions as to whether to call or question witnesses and what evidence to present are presumed to be matters of trial strategy, which this Court will not second-guess

22

with the benefit of hindsight.  *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

(Mich. Ct. App. Op., ECF No. 9-13, PageID.1484.)

Petitioner does not respond to the court of appeals' analysis in any way.  He simply restates the argument he made to the court of appeals.  Thus, Petitioner does not show how the court of appeals' analysis is contrary to *Strickland*, nor does he show how the appellate court's factual determinations regarding these claims is unreasonable on the record.  And, critically, Petitioner does not identify the motions his counsel failed to file, the nature of the evidentiary hearing counsel failed to seek, or the lines of questioning counsel failed to pursue.  Petitioner also fails to provide any explanatory detail in his reply brief.  (Pet'r's Reply Br., ECF No. 12, PageID.1751-1756.)  It is clear Petitioner believes that counsel did not investigate something and that Petitioner believes he was prejudiced as a result.  Petitioner just fails to explain what counsel failed to investigate beyond the sentencing, sequestration, and separate trial issues, which are discussed above.  Accordingly, Petitioner has failed to meet his burden under 28 U.S.C. § 2254(d) with regard to these issues and he is not entitled to habeas relief on these claims.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have

examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Recommended Disposition</u>**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  February 11, 2020                                    /s/ Ray Kent
                                                             United States Magistrate Judge

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).